# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 28, 2007

Charles R. Fulbruge III
Clerk

No. 06-10279

FOM PUERTO RICO SE

Plaintiff-Appellant

v.

DR BARNES EYECENTER INC; EYEMART EXPRESS LTD;
CORPORATION ABC; RICHARD ROE; JOHN DOE

Defendants-Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:05-CV-333

Before REAVLEY, BARKSDALE, and PRADO, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant FOM Puerto Rico, S.E. ("FOM Puerto Rico") appeals the district court's order granting summary judgment to Defendant-Appellee Eyemart Express, Ltd. ("Eyemart"). At issue is whether a release of all claims against Eyemart that was included in an order in the bankruptcy case of Debtor Dr. Barnes Eyecenter, Inc. ("DBEI") now bars FOM Puerto Rico's claims against Eyemart. After a review of the record, we agree with the district court and

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

conclude that FOM Puerto Rico's claims are barred. Therefore, we AFFIRM the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 21, 1997, FOM Puerto Rico agreed to lease retail space within a shopping center in Puerto Rico to Eyetems International, Inc. In July 2000, Eyetems, with FOM Puerto Rico's permission, assigned all of its rights and obligations under the lease to Drs. Raymond Rodriguez Morales and Yanira Garcia De la Cruz. Then, in December 2003, Drs. Rodriguez and De la Cruz assigned to DBEI all of their rights and obligations under the lease, again with FOM Puerto Rico's permission. FOM Puerto Rico contends that at the same time that DBEI agreed to the lease, Eyemart, an affiliate of DBEI, entered into a guaranty of the lease ("the guaranty") with FOM Puerto Rico in which Eyemart unconditionally guaranteed DBEI's obligation to pay rent, as well as DBEI's other obligations under the lease. Eyemart denies this allegation; however, for purposes of this appeal, it is not necessary for us to resolve that issue.

FOM Puerto Rico's lease with DBEI was to last until August 2008; however, on or about February 15, 2004, DBEI abandoned the leased property. DBEI subsequently filed for relief under Chapter 11 of the Bankruptcy Code on March 9, 2004, and the bankruptcy case was ultimately transferred to the bankruptcy court in the Northern District of Texas. FOM Puerto Rico filed a proof of claim in the DBEI bankruptcy proceeding, as did Eyemart. On August 10, 2004, DBEI submitted its Original Liquidating Plan ("the Plan") to the bankruptcy court. Section 5.03 of the Plan included a release of claims against Eyemart, among others, in exchange for Eyemart's agreement to subordinate its claims to those of all other creditors. Section 5.03, which is the section at issue in this appeal, states as follows:

> Any claims held by Debtor's insiders, including but not limited to Debtor's affiliate Eyemart Express, Ltd., shall be subordinated to the claims of all other creditors of DBEI's estate, and no distributions shall be made on account of same until all other claims are paid in full pursuant to this Plan. In return for the subordination of their claims, Debtor's insiders shall not have or incur any liability to any person for any claim, obligation, right, cause of action or liability, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part on any act or omission, transaction, or occurrence from the beginning of time through the Effective Date in any way relating to DBEI, its Bankruptcy Case, or the Plan; and all claims based upon or arising out of such actions or omissions shall be forever waived and released.

No party objected to the Plan. The bankruptcy court confirmed the Plan, and the confirmation order has not been appealed.

Meanwhile, the day after DBEI filed for bankruptcy, FOM Puerto Rico filed the instant suit for breach of the lease and liability under the guaranty against DBEI and Eyemart in the United States District Court for the District of Puerto Rico.[1] DBEI filed a notice of its bankruptcy with the district court, and the case was automatically stayed as to DBEI pursuant to 11 U.S.C. § 362 (2000). In February 2005, the Puerto Rico District Court transferred the lawsuit to the Northern District of Texas because it was related to DBEI's bankruptcy case.

Following the bankruptcy court's confirmation of the Plan, Eyemart moved for summary judgment in the instant suit on the ground that the language in Section 5.03 released any claims that FOM Puerto Rico had against Eyemart based on the guaranty. Eyemart also argued that res judicata barred FOM Puerto Rico from pursuing its claims against Eyemart. The district court granted Eyemart's motion for summary judgment and entered a final judgment

---

[1] FOM Puerto Rico also named Corporation ABC, Richard Roe, and John Doe as defendants in this suit; however, FOM Puerto Rico has never identified or served any of these alleged defendants. Consequently, they are not parties to this case.

in favor of Eyemart, ruling that res judicata applied to bar FOM Puerto Rico's claims. We have jurisdiction pursuant to 28 U.S.C. § 1291 and review the grant of summary judgment de novo. See Boone v. Citigroup, Inc., 416 F.3d 382, 392-93 (5th Cir. 2005).

## II. DISCUSSION

In this appeal, we are called to determine whether the language in Section 5.03 is sufficiently specific so as to bar FOM Puerto Rico's claims against Eyemart based on Eyemart's alleged guaranty of DBEI's lease. The general rule is that a discharge in bankruptcy has no effect on the liability of a guarantor of the debtor. Applewood Chair Co. v. Three Rivers Planning & Dev. Dist. (In re Applewood Chair Co.), 203 F.3d 914, 918 (5th Cir. 2000) (per curiam); see also 11 U.S.C. § 524(e) (stating that "discharge of a debt of the debtor does not affect the liability of any other entity . . . for[] such debt"). However, this court in Republic Supply Co. v. Shoaf recognized that the Bankruptcy Code does not preclude the discharge of a guarantor "when [the discharge] has been accepted and confirmed as an integral part of a plan of reorganization." 815 F.2d 1046, 1050 (5th Cir. 1987). In Shoaf, this court used the principle of res judicata to conclude that a release of claims against guarantors that was included in a plan of reorganization approved by the bankruptcy court barred a subsequent suit against a guarantor of the debtor. Id. at 1051-54. Eyemart relies on this ruling to support its position that res judicata similarly bars FOM Puerto Rico's claims in this suit.

The doctrine of res judicata forecloses relitigation of claims that were or could have been raised in a prior action. Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 312-13 (5th Cir. 2004). A party asserting res judicata must demonstrate four elements: (1) the parties in both the prior suit and the current suit are identical, (2) a court of competent jurisdiction rendered the prior judgment, (3) the prior judgment was final and on the merits, and (4) the same

cause of action is at issue in both suits. Id. at 313. In this case, neither party disputes that the first three elements are met. FOM Puerto Rico and Eyemart were both parties to DBEI's bankruptcy proceedings. Further, the bankruptcy court had jurisdiction to enter its order confirming the Plan, and the confirmation order constitutes a final judgment. Therefore, the only issue in this appeal is whether the cause of action at issue in the instant case was also at issue in the bankruptcy case. In the context of the facts before us, this requires us to decide whether the release of claims in Section 5.03 of the Plan was sufficiently specific so as to include FOM Puerto Rico's current claim against Eyemart.

This court considered similar circumstances in Shoaf. In that case, the widow of the debtor agreed to abandon any claim she might have to the debtor's life insurance proceeds in return for a release of all claims against the debtor and his guarantors. 815 F.2d at 1048. The bankruptcy court's order stated that "'[the] release shall include the release of any guarantees given to any creditor of the debtor which guarantees arose out of the debtor's business dealings with any creditor of the debtor . . . .'" Id. at 1054. We described this release as "clear and unambiguous" and held that it effectively barred a subsequent suit against a guarantor of the debtor. Id. at 1050, 1054.

In contrast, this court determined that the language of the release in Applewood Chair was too vague to permit a release of claims against two guarantors. 203 F.3d at 919. There, the release stated, "'The provisions of the confirmed plan shall bind all creditors and parties in interest, whether or not they accept the plan and shall discharge the Debtor, its officers, shareholders and directors from all claims that arose prior to Confirmation.'" Id. Despite this language, the court concluded that "the reorganization plan . . . contained no provision specifically releasing the personal guaranties" of the individuals. Id.

The language in this case falls somewhere between Shoaf and Applewood Chair with respect to the specificity of the release; however, several factors cause us to conclude that the bankruptcy release does bar FOM Puerto Rico's claims. First, as in Shoaf, the release of claims was an integral part of the bankruptcy order. As stated in Section 5.03 of the Plan, Eyemart agreed to subordinate all of its claims against DBEI to those of other creditors "[i]n return" for the release of all claims against Eyemart.[2] Further, at the hearing before the bankruptcy court regarding the confirmation of the Plan, counsel specifically noted that Eyemart received the release in consideration for its agreement to subordinate its claims. Thus, the release of claims was not simply boilerplate language that was inserted into the Plan, but rather a necessary part of the Plan itself.

Second, the language in this case, while not as specific as in Shoaf, is more specific than that in Applewood Chair. In Applewood Chair, the plan purported to release "all claims" against "the Debtor, its officers, shareholders and directors . . . ." 203 F.3d at 919. Here, Section 5.03 explicitly mentions Eyemart as an entity that benefits from the release and also limits the claims released to those "relating to DBEI, its Bankruptcy Case, or the Plan . . . ." While Section 5.03 does contain some broad language, the specific identification of Eyemart and the limitation on the claims released make the release sufficiently specific so as to include FOM Puerto Rico's claims against Eyemart.

FOM Puerto Rico argues that, because the Plan does not mention releasing "guaranties" or "the debts of the debtor," the Plan is too general and failed at the time of confirmation to put FOM Puerto Rico on notice that its claims might be barred. We have previously noted, however, that we interpret a reorganization plan "using traditional tools of contractual interpretation[] . . . ." Advisory Comm. of Major Funding Corp. v. Sommers (In re Advisory Comm. of Major

---

[2] At the time, DBEI owed Eyemart approximately $654,000.

Funding Corp.), 109 F.3d 219, 222 (5th Cir. 1997). Traditional contract interpretation requires us to look at a document as a whole. See RESTATEMENT (SECOND) OF CONTRACTS § 202 (1981) ("A writing is interpreted as a whole . . . ."). A reasonable interpretation of Section 5.03 and the Plan in their entirety is that all claims, including guaranties, against Eyemart are released. The failure to include certain words or phrases is thus not dispositive.[3]

In sum, when considered as a whole, the release of claims included in the Plan in the instant suit is sufficient to release FOM Puerto Rico's claim against Eyemart based on the guaranty. The release was an integral part of the Plan and is specific enough to satisfy the standard in Shoaf. Consequently, the final element of res judicata is met, and the district court properly dismissed FOM Puerto Rico's claims.

### III. CONCLUSION

Because the district court correctly determined that FOM Puerto Rico's claims against Eyemart were barred by res judicata, we AFFIRM the judgment of the district court.

AFFIRMED.

---

[3] We are also unpersuaded by FOM Puerto Rico's efforts to analogize this situation to the express negligence doctrine under Texas law. The concerns prompting the express negligence doctrine are different from those implicated in releasing a claim in a bankruptcy suit.